[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 42, (d.o.b. 1/30/60) and the defendant wife, 42, (d.o.b. 4/1/60) whose birth name is King, married on November 5, 1988 in White Plains, New York. The plaintiff resided in Connecticut for over a year before beginning this action for dissolution of the marriage and other relief thereby providing this court with jurisdiction. The defendant filed an answer and cross complaint on September 5, 2002 also seeking a dissolution and other relief. They have four children, Charles E. born August 5, 1989; Michael A. born April 25, 1991; Lauren R. born February 28, 1994 and Emily P. born October 19, 1995. They submitted a Stipulation re: Custody and Parenting Plan which the court has reviewed, has accepted and will order as part of the final judgment, a copy being incorporated by reference herein.
The plaintiff, who enjoys good health, is a graduate of Syracuse University where he received a B.S. in Business Administration and Construction Management in 1982. He then began working for Pavarini Construction Co., Inc. where he remained until he obtained employment with Eugene Racanelli, Inc. on September 15, 1999 as General Manager of its Fairfield County Regional Office doing business as "Racanelli-Pavarini" at a base salary of $115,000 plus 10% of the net profits of the office. In addition, he receives health care and dental coverage, life insurance, 15 days paid vacation, 10 paid holidays, 10 paid sick days and an employee discretionary 401k retirement plan, (Plaintiff's Exhibit #4). His current base salary is $119,025. He received no bonus for 2001 as of the time of trial and to resolve the issue the parties submitted a stipulation stating that in the event the plaintiff receives a bonus for services rendered in 2001 he will pay 50% of the gross as alimony to defendant (Plaintiff's Exhibit 37).
When married, the plaintiff had a retirement plan at Pavarini Construction worth $15,125.63 as of June 30, 1988 which was increased by an employer contribution of $2,929.40 as well as interest credited at year end bringing the value to $18,680.24 (Plaintiff's Exhibit #19). By CT Page 16269 its termination date of September 28, 1999 the retirement plan's value had grown to $135,317.57 (Plaintiff's Exhibit #20) which was rolled into a Fidelity IRA (Plaintiff's Exhibit #21).
The defendant, who enjoys good health, after attending West Virginia Wesleyan for 1 1/2 years, attended the Fashion Institute and graduated with an associate's degree in pattern making design. She then worked for a dress manufacturing company and then for a shirt company. She has no typing or computer skills. Since the marriage she has been a full time mother and homemaker. She brought no assets to the marriage but had a college loan balance and $500 owed Visa. The parties have stipulated that the defendant may earn gross earnings up to $15,000 per year and the plaintiff agrees not to file a motion to reduce alimony or child support based on such earnings (Plaintiff's Exhibit #38).
The plaintiff's parents, George and Mary Pavarini, had subdivided their property located on Byram Shore Road, Greenwich, Ct. in 1985 and by deed dated March 23, 1990 George Pavarini conveyed Lot #1 to the plaintiff (Plaintiff's Exhibit #8) with a right of first refusal in the event that the grantee elects to sell the property conveyed to him. The plaintiff paid no consideration for the conveyance. The gift tax return valued the lot at $75,900 and the cash gifts at a total of $210,451 (Plaintiff's Exhibit #34). These gifts enabled the plaintiff to build a house for his family. The plaintiff employed HH General Contractors who billed $335,387 for their work (Plaintiff's Exhibit #9). The plaintiff calculated the entire construction cost to be $365,525.99 and paid with "Pavair Note and Gifted Amount $238,451.22" and by "Total Out of Pocket ($110,000 financed through PCC) $127,074.77". The promissory note offered in evidence by the plaintiff is dated September 13, 1993 and the check of Pavair Corporation attached to the note bears the same date on its face but the backside of the check is not supplied (Plaintiff's Exhibit #10). There is a check dated Dec. 3, 1990 payable to plaintiff from Pavair for $20,000 and a second check dated Dec. 20, 1990 payable to plaintiff from Pavair for $18,000 (Plaintiff's Exhibits #32 and 33 representing part of the total in gifts to the plaintiff. The property was appraised and as of September 30, 2002 the appraiser's opinion of fair market value was $1,800,000. The property has a first mortgage balance of $157,900 and an equity credit line balance of $217,600. The court accepts this appraisal. The parties submitted a stipulation dated October 9, 2002 (Exhibit #36) incorporating their earlier agreement dated September 17, 2001 (Exhibit 13) agreeing that the real estate should be listed for sale as soon as practicable after final judgment. The court accepts the parties' stipulations of September 17, 2001 and October 9, 2002 and will order same as part of the judgment. CT Page 16270
The plaintiff had several complaints about the defendant's ability to run the house in that it was not neat or picked up and also that his wife had gained weight. There was no evidence that he helped to pick up after the children and the defendant said he did not. A cleaning lady was never employed during the marriage. Another cause of the breakdown was the plaintiffs interest in another lady which reached a crisis stage during the 1999 Christmas season when the defendant discovered a gift intended for the other lady. The plaintiff then vacated the home in the next month, January, 2000. The complaint was served March 24, 2000.
The plaintiff owns a condominium unit with a garage space known as 1 Landmark Square Unit 527 that he had acquired on July 28, 1988 as an investment for $125,955 (Plaintiff's Exhibits #14 and #15). As of September 18, 2002 it was appraised as having a market value of $135,000 (Plaintiff's Exhibit #2).
The plaintiff is indebted to Pavair Corporation by virtue of two notes, the earlier one dated November 16, 2000 for $10,000 with interest at 7.5% and a second note dated April 3, 2001 for $10,000 with interest at 7.5%.
The court notes that each party drew on the equity credit line for attorneys' fees. The plaintiff drew a total of $65,000 and the defendant drew a total of $54,000.
The plaintiff offered in evidence an "Agreement" signed by both parties on 9/17/01 wherein the attempt is made to exclude a motor vehicle purchase and cash distributed to the plaintiff from consideration "as part of the marital assets to be divided" (Plaintiff's Exhibit #13). The agreement was not submitted to the court for approval and the court finds it goes well beyond what is permitted by Conn Practice Book Sec. 25-5 (a)(1). The court declines to adopt it or to enforce its provisions
The court has considered the evidence in light of relevant case law and the relevant statutes and enters the following decree.
1. Judgment is rendered dissolving the marriage on the ground of irretrievable breakdown and each party is declared to be unmarried.
2. Joint legal custody is ordered for the four minor children with primary physical residence being with their mother and visitation by the father all as set out in the parties' stipulation re: custody and parenting plan filed with the court on October 8, 2002 (Plaintiff's Exhibit #28) and incorporated herein as court orders. CT Page 16271
3. The plaintiff shall pay to the defendant, as periodic alimony taxable to the payee and deductible for income tax purposes by the payer, the sum of $1,500 per month until the death of either party, the defendant's remarriage or her cohabitation as defined by statute and case law or until December 31, 2013. The term is not modifiable but the amount is. The court also orders the stipulation re: bonus (Plaintiff's Exhibit #37) and the stipulation re: earning capacity of the defendant (Plaintiff's Exhibit #38) both being attached hereto for reference.
4. The plaintiff shall pay to the defendant as child support the sum of $585 weekly. The court adopts the plaintiffs guidelines worksheet and attaches same for reference.
5. The residence known as 181 Byram Shore Road, Greenwich, Ct. is ordered sold and the parties' stipulation re: sale of residence (Plaintiff's Exhibit #36) is adopted as the order of the court and incorporated herein. The proceeds shall be divided as follows. All costs of sale including all encumbrances shall be paid. From the remaining balance the plaintiff shall be paid $286,351 representing the total gifts he received from his parents. The defendant shall next be paid $11,000 as an allowance to defend thereby making the totals drawn for legal fees equal. The remaining proceeds shall be divided equally between the parties. Either party may move for articulation of this order, jurisdiction being retained until the sale is completed.
6. The plaintiff shall retain the condominium unit with garage space as his sole property but shall pay the defendant $49,500 as her share of the appreciation in value of the unit, payment to be made within sixty days of date of entry of judgment.
7. The plaintiff shall be solely responsible for repayment of the September 13, 1993 note in the principal amount of $28,000 payable to Pavair Corporation (Exhibit #10).
8. The plaintiff shall be solely responsible for repayment of the two notes, each for $10,000, payable to Pavair Corporation, (Exhibits #6 #7).
9. The plaintiff is awarded the GMC Suburban and the Plymouth Voyager as well as his firearms collection that he values at $5,000.
10. The parties shall divide equally the two Fidelity Union savings accounts, the Fidelity portfolio, the three Fidelity IRA accounts and the ERI 401(k) plan. CT Page 16272
11. The parties shall divide their miscellaneous personal property as stipulated by them by written stip submitted at trial (Plaintiff's Exhibit #35).
12. They each shall retain their respective checking accounts.
13. The plaintiff shall maintain medical insurance for the children and shall cooperate with the defendant if she elects to secure COBRA coverage for herself.
14. The parties shall continue to be solely responsible for charge accounts and credit cards in their respective names.
15. The parties have deferred requesting an educational support order at this time as set forth in (Exhibit #28, para. 8(x)) and either party may petition for such order at a subsequent date.
SO ORDERED.
 ___________________ HARRIGAN, J.T.R.
 PLAINTIFF'S EXHIBIT NO. 28
D.N. FA 00 0177374 S
CHARLES E. PAVARINI ) SUPERIOR COURT )) FOR THE JUDICIAL DISTRICT OF v. ) STAMFORD-NORWALK AT STAMFORD )
BRIDGET PAVARINI ) OCTOBER , 2001
 STIPULATION RE: CUSTODY AND PARENTING PLAN
It is hereby stipulated and agreed by and between the parties, as follows:
1. The Husband and wife shall have joint custody of the minor children who will reside primarily with the Wife. The Husband shall have the right of frequent, liberal and flexible access to and parent2.n9 time with the children, including but not limited to weekends and during school vacations as herein provided.
2. The Husband's rights of parenting time with the children of the CT Page 16273 parties shall include, at a minimum, the following:
(i) Alternating weekends, from approximately 6:00 p.m. on Friday, to approximately 7:30 p.m. but no later than 8:00 p.m. on Sunday. The Wife will be flexible regarding the possibility of the children staying with the Husband until Monday morning upon prior reasonable notice. Such approval will not be unreasonable withheld by the Wife. If said parenting time shall tall on a holiday weekend, such as Martin Luther King Day, etc., said parenting time shall be extended to include the holiday until 7:30 p.m. on Monday;
(ii) During even numbered years, alternating Easter weekend, from 9:00 a.m. on Friday until approximately 7:30 p.m. on Sunday;
(iii) During odd numbered years, alternating Memorial Day weekend from Friday at evening until Monday at 7:30 p.m.;
(iv) During even numbered years, alternating Fourth of July from 9:00 a.m. to 10:00 p.m.;
(v) During even numbered years, alternating Labor Day weekends from Friday evening until Monday at 7:30 p.m.;
(vi) During odd numbered years, alternating Thanksgiving, from noon on Wednesday until 8:00 p.m. on Sunday;
(vii) During odd numbered years, alternating Christmas, from noon on Christmas Eve day until noon on Christmas Day, and during even numbered years, alternating the balance of Christmas vacation from noon on December 25th through noon on January 1st (e.g. in the year 2001, the Husband shall have Christmas Eve and Christmas Day and the Wife shall have from Christmas Day at noon through January 1, 2002);
(viii) Alternating winter and spring school vacation periods. The Husband shall have the winter vacation period in 2002 and in even numbered years thereafter; and the Wife shall have the winter vacation in 2003 and in odd-numbered years thereafter. The Wife shall have the spring vacation period in 2002 and in even numbered years thereafter; and the Husband shall have the spring vacation in 2003 and in odd-numbered years thereafter.
(ix) Two (2) weeks during the summer which may be taken separately or consecutively. The visitation period shall commence on Friday evening until the following Sunday evening at 8:00 p.m. The Husband shall inform the Wife of his selection of the summer vacation dates by May 1st of CT Page 16274 each year;
(x) Father's Day from 9:00 a.m. Sunday until 8:00 a.m. Monday;
(xi) The father's birthday from 6:00 p.m. until 8:00 a.m. the next day if on a school day and from 8:00 a.m. until 8:00 a.m. the next day if on a weekend;
(xii) Both parties will have time to be with the children on a child's birthday;
(xiii) Thursday evening each week from 6:00 p.m. until 8:00 a.m. on Friday. During the school year the Husband shall be responsible for taking the children to their school or school bus stop; and during the summer vacation and other vacations or holidays, the husband shall be responsible for getting the children to camp, other activity or home;
(xiv) The Husband may request additional parenting time with one or more of the children, and the Wife's agreement to such request shall not be unreasonably withheld. The Husband recognizes that such additional parenting time will need to be coordinated with both the children's and the wife's schedule and any specific request may not be possible given planned activities of the children or the Wife. Any such request will be made in advance with appropriate notification given the nature of the request.
3. Mother's Day and the Wife's birthday will be spent with the Wife.
4. If the children are to be taken by either parent away from home but in the tri-state. Connecticut, New York or New Jersey area, the other parent be notified of such trip. No minimum time period prior to such trip is required. For example, if the Husband or Wife decided to take the children to a New York Mets game in Shea Stadium, he or she would call. email or leave a note regarding such plan prior to Leaving for the ballpark.
5. If the children are to be taken out of the tri-state area (e.g., Massachusetts, California, Colorado, etc.), the other parent shall be notified of this planned trip with two-weeks prior notification. Approval would only be necessary if such a trip would impact on the other parent's time with the children. Notification should be in writing and sent by a method of delivery that would provide proof of date sent.
6. If the children are to be taken outside of the Continental United States or Puerto Rico, the other parent's approval of such a trip shall CT Page 16275 be obtained at least two-weeks prior to such a trip. Such approval by the other parent shall not be unreasonably denied.
7. In the event the wife intends to move with the children more than fifty (50) miles from Greenwich, Connecticut, she shall give the Husband not less than sixty (60) days notice, in writing, of her intention to move. If the Husband intends to challenge the Wife's right to move with the children, he shall file the appropriate motion with the court not less than thirty (30) days after the time the Wife notifies the Husband of her intention to move. In the extent the Husband files the appropriate motion wit.h the court, the Wife agrees not to relocate the children until she receives permission from the Court. The Superior Court shall retain jurisdiction to determine any issues pertaining to the children with respect to any move.
8. The parties shall exert every effort to promote free access and unhampered contact between the children and each of the parties and to foster a feeling of affection between the children and the parties hereto. Bach party shall exert his and her best efforts to refrain from doing anything to estrange the children from the other party, or to disparage the opinion of the children as to their mother or father, or to act in such a way as to hamper the free and natural development of love and respect between parent and child. The following major decisions concerning the children's life shall be made only upon the agreement of both parties, which agreement shall not be unreasonably withheld:
(i) The decision to enter the armed forces;
(ii) The decision to marry before the legal a3e;
(iii) The decision to file a law suit or accept a settlement on behalf of a minor child;
(iv) The decision to obtain a driver's license;
(v) The decision whether the minor child should be in counseling;
(vi) School decisions such as the advancement or retention of the minor child, choice of camp. decisions to change schools, private versus public education, and special educational needs of the minor child, including tutoring;
(vii) Decisions involving serious discipline problems of the minor child; CT Page 16276
(viii) Any post-secondary educational decisions and college education;
(ix) Decision to drive a minibike or motorcycle; and
(x) Any use or training in the use of firearms.
In the event the parties cannot agree on such matters, they shall resolve their dispute by referring the matter(s) to the Family Relations office of the Superior Court for the Judicial District of Stamford-Norwalk at Stamford for mediation, and if they are still unable to resolve the dispute, the mater shall be referred to the Superior Court for the Judicial District of Stamford-Norwalk at Stamford for final determination.
9. When the children are with the Wife she shall be responsible for all day-to-day decisions pertaining to the children. When the children are with the Husband, he shall be responsible for all day-to-day decisions pertaining to the children.
10. Promptly upon receipt, each of the parties shall furnish the other copies of any reports if from third persons or institutions concerning the health, education or welfare of the children. The parent in charge shall be responsible for insuring that the children meet their normal obligations such as homework.
11. If during either party's parenting time a caregiver or relative is in charge of the children that caregiver or relative will be instructed and notify both parents of any medical condition of the children immediately. Neither a caregiver nor relative has authority to administer corporal punishment to any of the children.
12. The parties shall have reasonable access to the children while they are with the other party. including free access by mail and free access by telephone during reasonable hours of the day and evening. However, such reasonable access by one party with the children when in the care of the other party is not intended to provide that party with a license to disrupt the parenting time of the other party. Each party agrees to contact the other party directly with respect to any request made by any of the children for a change in parenting time or custody. Further, the parties agree that it is in the best interest of the children that parties directly communicate with each other on issues regarding their children and not use the children as messengers. Each party shall exercise visitation with the children in the home of the other only with the prior express consent of that person. CT Page 16277
13. Each of the parties agrees to keep the other informed at all times of the whereabouts, including, but not limited to, the phone numbers where the children can be reached and an address where they will be located, of said children while said children are with the Husband or Wife, as the case may be, and agree that if either has any knowledge of any illness or accident or other circumstance seriously affecting the health or welfare of said children, the Husband or Wife, as the case may be, shall promptly notify the other.
THE PLAINTIFF THE DEFENDANT
/s/___________________ /s/___________________ CHARLES E. PAVARINI BRIDGET A. PAVARINI
 PLAINTIFF'S EXHIBIT NO. 38
D.N. FA 00 0177374 S
CHARLES E. PAVARINI ) SUPERIOR COURT )) FOR THE JUDICIAL DISTRICT OF v. ) STAMFORD-NORWALK AT STAMFOFD )
BRIDGET PAVARINI ) OCTOBER 9, 2002
 STIPULATION Re: EARNING CAPACITY
WHEREAS, the parties are desirous of resolving certain issues concerning the earning capacity of the defendant.
IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AS FOLLOWS:
1. The annual earning capacity of the defendant is $15,000. The plaintiff agrees not to file a motion to reduce alimony or child Support based on any gross earnings up to $15,000 per year by the defendant.
THE PLAINTIFF THE DEFENDANT
/s/___________________ /s/___________________ CHARLES E. PAVARINI BRIDGET A. PAVARINI
 PLAINTIFF'S EXHIBIT NO. 37
D.N. FA 00 0177374 S CT Page 16278
CHARLES E. PAVARINI ) SUPERIOR COURT )) FOR THE JUDICIAL DISTRICT OF v. ) STAMFORD-NORWALK AT STAMFOFD )
BRIDGET PAVARINI ) OCTOBER 9, 2002
 STIPULATION Re: BONUS
WHEREAS, the parties are desirous of resolving certain issues concerning any bonus for 2001 received by the plaintiff.
IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AS FOLLOWS:
1. In the event that the plaintiff receives a bonus for services rendered in 2001 to Eugene Racanelli, Inc., he will pay to the defendant during her lifetime 50% of the gross bonus received as alimony, tax deductible to the plaintiff and taxable to the defendant.
THE PLAINTIFF THE DEFENDANT
/s/___________________ /s/___________________ CHARLES E. PAVARINI BRIDGET A. PAVARINI
[EDITORS' NOTE: WORKSHEET FOR THE CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES IS ELECTRONICALLY NON-TRANSFERRABLE.]
 PLAINTIFF'S EXHIBIT NO. 36
D.N. FA 00 0177374 S
CHARLES E. PAVARINI ) SUPERIOR COURT )) FOR THE JUDICIAL DISTRICT OF v. ) STAMFORD-NORWALK AT STAMFOFD )
BRIDGET PAVARINI ) OCTOBER 9, 2002
 STIPULATION Re: SALE OF RESIDENCE, PENDENTE LITE
WHEREAS, the parties are desirous of resolving certain issues concerning the sale of real property located at 181 Byram Shore Road, Greenwich, Connecticut (the "Greenwich residence")
IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AS FOLLOWS: CT Page 16279
1. September 17, 2001 Agreement. The parties request the Court's approval of their Agreement dated September 17, 2001, which has been submitted into evidence as Exhibit 13 at the trial on this matter, and incorporation of the terms of this Agreement into this Stipulation.
2. Sale of Greenwich Residence and Selection of Listing Broker. The Husband is the owner the Greenwich residence. The Greenwich residence shall be listed for sale as soon as practicable after final judgment with a real estate broker selected by the parties and on terms and conditions mutually agreeable to the parties.
3. Listing Price and Reduction in Listing Price. The parties shall attempt to mutually agree on the listing price. In the event the parties are unable to agree on a listing price for said property, each party shall name a broker to recommend the listing price, if the two broker's listing price recommendation are within 5% of each other, the average of the two recommendations shall be the listing price. If the two brokers' recommendations are not within 5%, the two brokers shall select a third broker to recommend the listing price, the middle recommendation of the three recommendations shall be the listing prices;* In the event the listing broker recommends a reduction in the listing price, the parties shall consider reducing the listing price. If the parties are unable to agree on a reduction in the listing price, the same process as described above in determining the listing price shall be used in determining whether and how much a reduction in the listing price.
4. Defendant's Cooperation in the Sale of Greenwich Residence. The defendant shall cooperate in the sale of the property, including having the property presentable and available for inspection by potential buyers or brokers. Upon reasonable advance notice, with the defendant present and at a mutually convenient time, the plaintiff shall have reasonable access into the Greenwich residence to assist in the preparation for sale and the marketing of the residence, which access shall not unreasonably be withheld by the defendant.
5. Offer Within Five Percent of Asking Price Deemed Accepted. In the event one of the parties wishes to accept an offer that is received within five (5%) percent of the asking price or reduced asking price, it shall be deemed accepted by both parties.
6. Transfer of One-Half Interest in Greenwich Residence to Defendant.
In order to minimize capital gains tax and for each party to qualify for the $250,000 exclusion of capital gains on the sale of a residence, the Husband agrees to transfer via a quit-claim deed to the Wife a one-half CT Page 16280 interest in the Greenwich residence immediately prior to the sale of the property. The Wife agrees to cooperate with such transfer to her and agrees to transfer her share of the Greenwich residence to the buyer.
7. Escrow Account for Capital Gains Tax. The parties agree that a portion of the net proceeds from the sale of the Greenwich residence shall be placed in escrow and held by Thomas P. Skidd, Jr., Esq., of Cummings Lockwood, Stamford, Connecticut, the attorney who will be handling the real estate closing. This escrow account shall be used to pay each parties' portion of the capital gains taxes due from the sale of the property. The amount to be placed in escrow shall be determined by Cummings Lockwood. Based on a sale of the Greenwich residence at $1,800,000, costs of sale at $108,000, cost basis of $441,425, and capital gains exclusion of $250,000 each for both the plaintiff and the defendant, the estimated — total federal and state capital gains tax for both parties would be $183,900. In the event that there is insufficient money in the account to pay the capital gains tax or a balance in the account after the taxes have been paid, the balance due to be paid or distributed to the parties will be divided as directed by the Court.
8. The net proceeds of sale shall be divided as the Court directs.
9. The Superior Court shall retain jurisdiction over all disputes between the parties regarding the listing and sale of the Greenwich residence.
THE PLAINTIFF THE DEFENDANT
/s/___________________ /s/___________________ CHARLES E. PAVARINI BRIDGET A. PAVARINI
ATTORNEY FOR THE PLAINTIFF ATTORNEY FOR THE DEFENDANT
/s/___________________ /s/___________________ JOHN P. EKBERG, III JOHN WAYNE FOX
 PLAINTIFF'S EXHIBIT NO. 35
D.N. FA 00 0177374 S
CHARLES E. PAVARINI ) SUPERIOR COURT CT Page 16281 )) FOR THE JUDICIAL DISTRICT OF v. ) STAMFORD-NORWALK AT STAMFOFD )
BRIDGET PAVARINI ) OCTOBER 9, 2002
 STIPULATION Re: PERSONAL PROPERTY, PENDENTE LITE
WHEREAS, the parties are desirous of resolving certain issues concerning their personal property.
IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AS FOLLOWS:
1. With the exception to items listed on Schedule A, attached herewith, all personal property located at 181 Byram Shore Road Greenwich, Connecticut shall be the personal property of the defendant.
2. All property located at 1 Landmark Square, Unit #527, Port Chester, New York, and at the storage unit listed on plaintiff's October 2, 2002 financial affidavit shall be the personal property of the plaintiff.
THE PLAINTIFF THE DEFENDANT
/s/___________________ /s/___________________ CHARLES E. PAVARINI BRIDGET A. PAVARINI
 SCHEDULE A TO OCTOBER 9, 2002 STIPULATION PLAINTIFF'S PERSONAL PROPERTY LOCATED AT 181 BYRAM SHORE ROAD
Two throw rugs (approx. 8' x 10') — from plaintiff's grandparents, one of which will remain in the residence until the residence is sold.
Dining room table, chairs and decorative pedestal — from plaintiff's brother, excluding end chairs, which will remain in the residence until the residence is sold.
Various boxes located in the attic containing plaintiff's property and files.
Band saw located in the garage.
All athletic equipment located in the basement, excluding the treadmill. CT Page 16282
All tools, boxes, parts, reloading equipment, accessories, books, etc., located in the basement that belong to the plaintiff.
Golf clubs, skis, clothing and boots located in the basement.
Drawing table in basement.
Clay targets, automotive tools, boxes located in the garage storage loft.
Video camera and accessories gifted to the parties by plaintiff's parents. CT Page 16283